IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LAVON CECIL SMITH, JR., ) | |
| Petitioner ) | |
| ) | |
| vs. ) | Civil Action No. 08-1027 |
| ) | Chief U.S. Magistrate Judge Amy Reynolds Hay |
| DAWN CHAMBERLAIN; THE ) | |
| DISTRICT ATTORNEY OF THE ) | |
| COUNTY OF ALLEGHENY; THE ) | |
| ATTORNEY GENERAL OF THE STATE ) | |
| OF PENNSYLVANIA, ) | |
| Respondents ) | |

## MEMORANDUM OPINION

Lavon Cecil Smith ("Petitioner"), a state prisoner, was convicted in a bench trial of first degree murder in the stabbing death of his wife and of aggravated assault in the contemporaneous stabbing attack on their teenaged daughter. Petitioner has filed a federal habeas petition pursuant to Section 2254, attacking his convictions. Unfortunately, the habeas petition is not a model of clarity. However, Petitioner does raise a whole host of ineffective assistance of trial counsel and appellate counsel claims in addition to other miscellaneous claims. Because the state courts rejected all but one of his claims on the merits, and because Petitioner fails to show that the state courts' disposition of his claims was contrary to or an unreasonable application of United States Supreme Court precedent, his petition should be denied. Because the one issue not addressed by the state courts is meritless, there is no basis for granting relief.

**Relevant Factual and Procedural History**

At the bench trial both Petitioner and his daughter-victim took the stand and testified to their competing versions of the events. The daughter victim testified that Petitioner's attack was unprovoked and that only after he had started stabbing her and her mother did they attempt to

defend themselves from Petitioner. Petitioner testified that it was they who attacked him and he had to defend himself against them. The trial judge credited the daughter-victim's version of the events and discredited Petitioner's version of the events. After the bench trial, Petitioner filed a direct appeal to the Superior Court. In response to the appeal, the trial court filed an opinion addressing the issues that Petitioner raised on appeal. The trial court recounted the factual history of the case as follows:

> In September of 2000, the Defendant, the deceased, Donna Williams, and their daughter, Daunita Smith, were living at [a home] in the City of Pittsburgh. The son of the Defendant and Ms. Williams [the wife-victim] was living away at college. Daunita Smith testified that during the month of September, she noticed friction in the household between her parents. She testified that on numerous occasions, her mother asked the Defendant to leave the household. (T.T. 26-29). At one point, days before September 24, 2000, the police were called by Daunita because she was awakened in the middle of the night by her mother screaming. The police spoke with both parents and left the household. (T.T. 30-32)
> On Sunday, September 24, 2000, Ms. Williams and Ms. Smith went to church and had dinner with friends before arriving home at approximately 3:30 p.m. The Defendant was in the home watching television. The Defendant then began a series of altercations with Ms. Williams and Ms. Smith, all of which occurred in the kitchen. The Defendant, in a sarcastic tone, chastised Daunita for calling the police and used vulgarities toward both victims. The Defendant was also upset because he was asked to leave the house and would not be there to see his son graduate college. At one point, the altercations escalated to the Defendant breaking a beer bottle on the kitchen floor. (T.T. 36-39).
> Following the incident with the beer bottle, the Defendant went into the kitchen and grabbed two (2) knives out of a drawer and told the victims it was about to end. (T.T. 41-42) The Defendant said he wanted to kill Daunita first because she called the police. The Defendant then trapped both victims in a corner and told them they had thirty (30) seconds to tell him why they should not die. Not satisfied with their answer that, "God would not want him to kill," the Defendant began stabbing the victims repeatedly. (T.T. 42-44)
> Donna Williams was able to get to a phone and summon the police. The Defendant was then able to get on top of both victims and repeatedly stabbed them saying that he did not want to see them breath anymore. (T.T. 47-48) The police arrived and the Defendant was subdued.

>       Donna Williams suffered multiple stab wounds to her body. The wound, which caused her death, was a stab wound to the abdomen, which perforated the aorta and another vein. (T.T. 149).
>       Daunita Smith survived the attack, but she was hospitalized for six (6) days. She had to have multiple surgeries and had numerous scars from her wounds and subsequent surgeries. (T.T. 51-55)
>       The Defendant was transported to the Detective Bureau, where he was mirandized and gave a taped statement to the police.

Dkt. [16-2] at 9 to 11 (foot note omitted).

The Respondents note that there were significant discrepancies between what Petitioner testified to on the stand at trial and what he said in his recorded statement to the police. Specifically, the Respondents note that Petitioner never told the Detectives that he retrieved the two knives so as to carve a roast, or that his daughter had either attempted to or did successfully stab him, or that his wife had attacked him without provocation, all of which he testified to at trial but failed to mention in his taped statement. Petitioner told police in his Statement that Daunita only started to hit him after he brandished the knives. Dkt. [16] at 23.

Petitioner raises the following issues in this habeas petition:

> 1. THE SUPERIOR COURT ERRORED [sic] IN REVIEWING PETITIONER'S FIRST QUESTION "WHETHER TRIAL COUNSEL RENDERED INEFFECTIVE COUNSEL BY NOTIFYING THE COURT'S [sic] ON MAY 16, 2001, JUNE 28, 2001, AND JULY 24, 2001 OF MENTAL INSANITY DEFENSE AND DURING THE TRIAL, WHEN THERE WAS AN EXISTING ISSUE OF SELF-DEFENSE FROM UNLAWFUL FORCE ON OCTOBER 6, 2000, THAT TRIAL AND DIRECT APPEAL COUNSEL PRESENTED DUAL CHARACTER TRAITS WHICH CREATED PETITIONER GOING TO TRIAL WITH TWO DEFENSES. . . .

Dkt. [1] at 11.

> 2. THE SUPERIOR COURT ERRORED [sic] IN REVIEWING ADDRESSING [sic] THE SUBSTANTIVE LEGAL QUESTION/ISSUE RAISED IN PETITIONER'S APPEAL OF THE COGNIZABLE ISSUE OF APPELLATE AND TRIAL COUNSEL'S INEFFECTIVE ASSISSTANCE [sic] OF COUNSEL

>THAT SO UNDERMINED THE TRUTH DETERMINING PROCESS BY FAILING TO SECURE AND PRESENT/PRESERVE A SCIENTIFIC EXPERT[] TO EXAMINE AND TEST THE "THREE WEAPON'S"[sic] FOR PETITIONER'S DAUGHTER['s] BLOOD, HAIR, SKIN, AND VICTIMS FINGERPRINTS AND OTHER PHYSICAL EVIDENCE, WHICH WAS TESTIFIED [to] BEFORE AND DURING TRIAL WHICH WOULD HAVE GIVEN GREATER CREDIBILITY TO THE PETITIONER'S SELF-DEFENSE DEFENSE, RESULTING IN PETITIONER BEING DENIED THE REQUIRED EFFECTIVE ASSISSTANCE [sic] OF COUNSEL GUARANTEE[d] IN THE U.S. CONST. AMEND. 6 AND/OR DUE PROCESS AND EQUAL PROTECTION UNDER THE LAW AS GUARANTEED IN THE U.S. CONST. AMEND 14. . . .

Id., at 11 to 12.

>3.  THE SUPERIOR COURT ERRORED [sic] IN REVIEWING THE QUESTION AFFIRMING THE TRIAL COURT'S HOLDING THAT THE EVIDENCE HELD EVERY MATERIAL FACT, BORE THE THRESHHOLD [sic] OF THE BURDEN OF PROOF, TO DISPROVE THE DEFENDANT'S DEFENSE OF SELF DEFENSE BEYOND A REASONABLE DOUBT. . . .

Id., at 12.

>4.  THE SUPERIOR COURT ERRORED [sic] IN REVIEWING AND NOT ADDRESSING THE SUBSTANTIVE LAW QUESTION/ISSUE RAISED IN PETITIONER'S APPEAL OF THE COGNIZABLE ISSUE OF APPELLATE AND TRIAL COUNSEL'S INEFFECTIVE ASSISSTANCE [sic] IN FAILING TO PROPERLY RAISE, PRESERVE, PRESENT AND LITIGATE THE FACT THE MEDICAL RECORDS AND THE PHYSICIAN'S TESTIMONY ON RECORD AT TRIAL, COMPLETELY REFUTE PROSECUTION'S CONTENTION AND VICTIM[']S TESTIMONY ON RECORD AT TRIAL, THAT SHE WAS STABBED SEVERAL TIMES IN THE BACK; THAT SAID INEFFECTIVE ASSISSTANCE [sic] OF COUNSEL SO UNDERMINED THE TRUTH DETERMINING PROCESS THAT NO FAIR ADJUDICATION OF THE FACTS COULD HAVE OCCURRED, RESULTING IN PETITIONER BEING DENIED THE PROTECTION AND GUARANTEE OF THE U.S. CONST. AMEND. 6 AND U.S. CONST. AMEND. 14. . . .

Id., at 15 to 16.

>5.  THE SUPERIOR COURT ERRORED [sic] IN REVIEWING TO ADDRESS PETITIONER'S LEGAL QUESTION/ISSUE RAISED IN APPEAL "DID THE TRIAL COURT BECOME EXTREMELY PREJUDICED BY CONVICTING

>    DEFENDANT WHILE STILL ON TRIAL, DUE TO BOTH COUNSEL's OF
>    THE DEFENDANT AND COUNSEL OF THE COMMONWEALTH?  WAS IT
>    LAWFUL?" . . . .

Id., at 16.

>    6. THE SUPERIOR COURT ERRORED [sic] IN REVIEWING THE LEGAL
>    QUESTION/ISSUE WHETHER THE TRIAL COURT ABUSED ITS
>    DISCRETION WHEN IT ALLOWED HIS STATEMENT WHEN DEFENDANT
>    INVOKED HIS U.S. CONST. AMEND. 5, RIGHT TO REMAIN SILENT.

Id.

The Respondents filed their Answer to the habeas petition, Dkt. [16]. They also caused the original State Court record to be transmitted to this Court. Petitioner filed a hand written traverse, Dkt. [17], and then he filed an exact copy of the same traverse except this time it was type written, Dkt. [18]. All of the parties have consented to have the Magistrate Judge exercise plenary jurisdiction and enter final judgment. Dkt. Nos. [7] & [14].

**AEDPA is applicable**

The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, tit. I, §101 (1996) ("AEDPA"), which amended the standards for reviewing state court judgments in federal habeas petitions filed under 28 U.S.C. § 2254, was effective April 24, 1996. Because petitioner's habeas petition was filed in the year 2008, AEDPA is applicable to this case. Werts v. Vaughn, 228 F.3d 178, 195 (3d Cir. 2000).

Where the state courts have reviewed a federal issue presented to them and disposed of the issue on the merits, and that issue is also raised in a federal habeas petition, AEDPA provides the applicable deferential standards by which the federal habeas court is to review the state courts' disposition of that issue. See 28 U.S.C.§ 2254(d) and (e).

5

In <u>Williams v. Taylor</u>, 529 U.S. 362 (2000), the Supreme Court has expounded upon the standard found in 28 U.S.C. § 2254(d). In <u>Williams</u>, the Court explained that Congress intended that habeas relief for errors of law may only be granted in two situations: (1) where the state court decision was "contrary to . . . clearly established Federal law as determined by the Supreme Court of the United States" or (2) where that state court decision "involved an unreasonable application of[] clearly established Federal law as determined by the Supreme Court of the United States." <u>Id</u>. at 404-05 (emphasis deleted). The Court explained the two situations in the following terms:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

<u>Williams</u>, 529 U.S. at 412-13. The Court of Appeals for the Third Circuit has also elucidated the "contrary to" clause by noting that "it is not sufficient for the petitioner to show merely that his interpretation of Supreme Court precedent is more plausible than the state court's; rather, the petitioner must demonstrate that Supreme Court precedent requires the contrary outcome." <u>Werts v. Vaughn</u>, 228 F.3d at 197 (<u>quoting</u> <u>Matteo v. Superintendent, SCI-Albion</u>, 171 F.3d 877, 888 (3d Cir. 1999)(en banc)). Moreover, it is Petitioner's burden to prove the state court decision is either contrary to or an unreasonable application of clearly established federal law. <u>See</u> <u>Matteo</u>, 171 F.3d at 888; <u>Werts v. Vaughn</u>, 228 F.3d at 197.

AEDPA also permits federal habeas relief where the State court's adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. 2254(d)(2).

**Discussion**

Issues 1, 2 and 4 involve claims of ineffective assistance of counsel. Hence, we turn initially to the standards for ineffectiveness.

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court explained that there are two components to demonstrating a violation of the right to effective assistance of counsel. First, the defendant must show that counsel's performance was deficient. This requires showing that "counsel's representation fell below an objective standard of reasonableness." Id. at 688; see also Williams v. Taylor, 529 U.S. at 390-91. In reviewing counsel's actions, the court presumes that counsel was effective. Woods v. McBride, 430 F.3d 813, 821 (7th Cir. 2005)("We view counsel's performance deferentially, with the understanding that there is a great deal of room for disagreement among reasonable attorneys as to the appropriate strategy or tactics to employ in the course of representation, so we indulge the 'strong presumption that counsel rendered reasonably effective assistance.'")

Because the Strickland test is one of objective reasonableness, it does not matter if counsel actually considered the course taken or foregone to determine whether the actions or omissions were objectively reasonable; so long as a hypothetical reasonable attorney could have done the same, there is no ineffectiveness. Chandler v. United States, 218 F.3d 1305, 1316 n.16 (11th Cir. 2000). In light of the strong presumption of counsel's effectiveness and the objective reasonableness standard, the Court of Appeals for the Third Circuit has explained, "[i]t is [] only

7

the rare claim of ineffective assistance of counsel that should succeed under the properly deferential standard to be applied in scrutinizing counsel's performance." United States v. Kauffman, 109 F.3d 186, 190 (3d Cir. 1997)(quoting United States v. Gray, 878 F.2d 702, 711 (3d Cir. 1989)).

Second, under Strickland, the defendant must show that he was prejudiced by the deficient performance. "This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. To establish prejudice, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Williams, 529 U.S. at 391. In addition, in undertaking a prejudice analysis, the Court properly considers the strength of the evidence against the defendant because "... a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." Buehl v. Vaughn, 166 F.3d 163, 172 (3d Cir. 1999). The Strickland test is conjunctive and a habeas petitioner must establish both the deficiency in performance prong and the prejudice prong. See Strickland, 466 U.S. at 687; Dooley v. Petsock, 816 F.2d 885, 889 (3d Cir. 1987). As a result, if a petitioner fails on either prong, he loses. Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000); Foster v. Ward, 182 F.3d 1177, 1184 (10th Cir. 1999).

Petitioner presented some of the ineffective assistance of trial counsel claims in PCRA proceedings. Issue 1 of the habeas petition is equivalent to issue 1 raised in the PCRA appeal to the Superior Court. Dkt. [16-6] at 29 to 30. Issue 2 of the habeas petition is equivalent to Issue 2

raised in the PCRA appeal to the Superior Court. Id., at 31. We deem Issue 4 to be substantially equivalent to issue 3 raised in the PCRA appeal to the Superior Court. Id.[1] The Superior Court addressed these issues on the merits.

In disposing of these ineffective assistance claims, the state courts relied upon the test announced in Commonwealth v. Pierce, 527 A.2d 973 (Pa. 1987).[2] The Pennsylvania Supreme Court has developed an ineffective assistance standard that requires a petitioner to demonstrate that (1) the underlying claim is of arguable merit, (2) counsel had no reasonable basis for the act or omission in question, and (3) but for counsel's act or omission, the outcome of the proceedings

---

[1] While in the habeas petition, Petitioner raised Issue 4 as a claim of ineffective assistance of counsel, in the PCRA appeal to the Superior Court, Petitioner raised the issue directly as follows:

> Whether the Commonwealth can fraudulently falsify medical attention given to the trial court, impeached by the doctor's testimony, that injuries occurred to the back, nullifying the self protection defense, unimpeached by trial counsel and misleading the appellate court is harmless.

Dkt. [16-6] at 31. Apparently, Petitioner's argument is that there was some testimony that his daughter was stabbed in the back and that such testimony is absolutely not true. He further contends that such testimony undermined his defense theory of self defense – reasoning that if she were stabbed in the back, it would indicate that she was not the aggressor but perhaps was fleeing and he attacked her. The Superior Court addressed the back injury evidence claim as follows:

> Appellant apparently claims that the Commonwealth fabricated evidence of "injuries to the back . . . into the record." Brief for Appellant at 23. Appellant cited pages 197-200 of the trial transcript that includes a stipulation regarding the medical treatment received by Appellant's daughter at the hospital. It contains no mention of back injuries. Appellant's argument is, therefore, without basis.

Dkt. [16-6] at 37. We deem this reasoning by the Superior Court a sufficient disposition of Petitioner's claim raised herein of ineffective assistance of trial and appellate counsel for failing to litigate this issue. Essentially, counsel cannot be found ineffective for failing to raise an issue that is without support in the record, or in other words, for failing to raise a meritless issue. Werts v. Vaughn, 228 F.3d 178, 202 (3d Cir. 2000) ("counsel cannot be deemed ineffective for failing to raise a meritless claim").

[2] The Superior Court cited directly to Commonwealth v. Washington, 927 A.2d 586 (Pa. 2007). Dkt. [16-6] at 33. Although the Superior Court did not directly cite to Pierce, it utilized the three prong test of Pierce, simply citing another Pennsylvania Supreme Court case for the Pierce test.

would have been different.  See Commonwealth v. Douglas, 645 A.2d 226, 230-31 (Pa. 1994); Commonwealth v. Pierce, 527 A.2d at 975.

     This Pennsylvania standard has been found to be materially identical to the test enunciated in Strickland.  Werts, 228 F.3d at 203.  The Third Circuit has ruled that this standard is not "contrary to" Strickland, and therefore, "the appropriate inquiry is whether the Pennsylvania courts' application of Strickland to [petitioner's] ineffectiveness claim was objectively unreasonable, i.e., the state court decision, evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under Strickland."  Werts. 228 F.3d at 204.  Because the Superior Court decided Petitioner's claims of ineffective assistance of counsel under the standards of Pierce and those standards are essentially the same as the Strickland standard, this court is required to apply the deferential standard of 28 U.S.C. § 2254(d), which demands that a habeas petitioner demonstrate that the state court's adjudication of the federal claim resulted in a decision that was contrary to Supreme Court precedents or an unreasonable application of federal law.  Pursuant to the holding of Werts, Petitioner is barred from arguing that the Superior Court's decision applying the Pierce standard is contrary to the standard announced in Strickland.  Petitioner could argue the second sense of "contrary to," i.e., the Superior Court reached a different result from that of the federal Supreme Court on a set of materially indistinguishable facts.

     However, Petitioner has not argued and does not point to any federal Supreme Court decision, in existence at the time that the Superior Court rendered its decision in this case, that has a set of facts that are materially indistinguishable from Petitioner's case where the outcome was different from the outcome reached by the Superior Court herein.  Williams, 529 U.S. at 412

(analyzing whether a state court decision is "contrary to" Supreme Court precedent requires analysis of the "holdings as opposed to the dicta, of this Court's decisions as of the time of the relevant state court decision."). Accordingly, Petitioner has not shown that the Superior Court's decision in this case was contrary to clearly established federal law as determined by the United States Supreme Court, in either of the two senses of "contrary to."

Thus it remains open to Petitioner to show that the Superior Court's decision was an unreasonable application of federal law. Petitioner has not carried his burden to show that the Superior Court's decision constituted an unreasonable application of federal law concerning ineffective assistance of counsel. He never explicitly argues that the state courts' adjudication of his claims was contrary to or an unreasonable application of any particular extant United States Supreme Court precedent. Hence, he fails to carry his burden to prove entitlement to relief on the claims of trial counsel's ineffectiveness.

To reiterate, Petitioner has failed to carry his burden to show that the state court's adjudication of his claims of ineffectiveness of counsel constituted an unreasonable application of United States Supreme Court precedent. Hence, he is not entitled to relief on those claims. This disposes of the following three issues raised in the habeas petition: (1) Issue 1, Dkt. [1] at 11; (2) Issue 2, Dkt. [1], at 11 to 12; and (3) Issue 4, Dkt. [1] at 15 to 16.

We next turn to the remaining issues. We next take up Issue 3 which, as understood by this Court, challenges the correctness of the state court's holding that the Commonwealth carried its burden of disproving Petitioner's defense of self defense.

This issue was raised in direct appeal. The trial court addressed the issue as follows:

> The Defendant next challenges the sufficiency of the evidence with respect to the Commonwealth disproving self-defense or imperfect self-defense. The Defendant also challenges the weight of the evidence.
> In reviewing the sufficiency of the evidence claim, the test we apply is whether the evidence and all reasonable inferences taken from the evidence, viewed in the light most favorable to the Commonwealth as verdict winner, were sufficient to establish all the elements of the offense beyond a reasonable doubt. Commonwealth v. Lopata. 754 A.2d 685, 688 2000 Pa. Super. 163, citing Commonwealth v. Williams, 554 Pa. 1, 720 A.2d 679, 682 (1998). In order for the Commonwealth to disprove beyond a reasonable doubt the Defendant's claim of justification, it must demonstrate any one of the following:    "(1) the defendant's belief that it was necessary to kill the victim in order to protect himself from death or serious bodily harm was unreasonable; (2) the defendant provoked the use of force; or (3) the defendant had a duty to retreat and could safely do so." Commonwealth v. Gonzalez, 415 Pa.Super. 564, 609 A.2d 368 (1992). The record clearly supports a finding that justification of any sort was disproven beyond a reasonable doubt. The Defendant, after stating his intent to kill, brutally attacked two (2) unarmed, cowering victims. The Defendant's claim must fail.

Dkt. [16-2] at 12 to 13. The Superior Court adopted the opinion of the trial Court as its own in disposing of the issues raised including the foregoing one. Dkt. [16-3] at 1 to 2.

Petitioner has not argued nor established that the foregoing disposition is contrary to or an unreasonable application of Supreme Court precedent. Nor do we find that it is. In fact, there were two widely divergent scenarios depicted by the testimony at Petitioner's bench trial. One was where the Petitioner was the victim of aggression by the wife and daughter, which necessitated the use of deadly force by the Petitioner. The other was where the Petitioner was the initiator and perpetrator of an unprovoked attack, killing the wife and severely injuring the daughter. The finder of fact, crediting the one version over the other, committed no error as such credibility determinations are nigh unreviewable at this stage. R.C. Marshall v. Longberger, 459 U.S. 422, 434 (1983) (stating that federal habeas court has "no license to redetermine the credibility of witnesses whose demeanor has been observed by the state trial court...."); 28 U.S.C.

§ 2254(e)(1); Campbell v. Vaughn, 209 F.3d 280, 288 (3d Cir. 2000) ("[a]lthough it is true that the state trial court did not specifically articulate its credibility findings, it can scarcely be doubted from its written opinion that [the habeas petitioner's] factual contentions were resolved against him.")(quoting LaVallee v. Delle Rose, 410 U.S. 690, 692 (1973) (per curiam)); Williams v. Johnson, 845 F.2d 906, 909 (11th Cir. 1988)("In habeas corpus cases, state court factual findings receive a presumption of correctness.  Implicit findings regarding the credibility of witnesses are included among the findings that this Court must credit.") (citations omitted).

  Moreover, Petitioner's suggestion that the state court trial record affirmatively impugns the testimony of the victim-daughter is unpersuasive.  At most, portions of the record that Petitioner points to as supporting his position are ambiguous concerning his contentions and, in order to find for him, this court would have to resolve all of the ambiguities in his favor.  This is simply not the rule under federal habeas review.  Higgason v. Clark, 984 F.2d 203, 208 (7th Cir. 1993)("On collateral attack, a silent record supports the judgment; the state receives the benefit of a presumption of regularity and all reasonable inferences. . . . His [i.e., habeas Petitioner's] entire position depends on persuading us that all gaps and ambiguities in the record count against the state. Judgments are presumed valid, however, and *Parke* emphasizes that one who seeks collateral relief bears a heavy burden."); Robinson v. Smith, 451 F.Supp. 1278, 1284 n. 6 (W.D.N.Y. 1978)(on habeas review, the court stated that "In my own independent review of the record, I have resolved ambiguities against petitioner"); Patrick v. Johnson, NO. CIV.A. 3:98-CV-2291, 2000 WL 1400684, at *9 (N.D. Tex. Aug. 23, 2000)("whatever ambiguity exists in the record must be resolved in favor of the trial court's finding.").   In fact, this is true of all of his contentions concerning the trial record and his arguments in support of his various positions.

13

Next, we turn to issue 5 as raised in his habeas petition, concerning whether the trial court erred by convicting Petitioner while he was still on trial.  The evidence he points to is that the trial court stated, after all of the parties had rested, that "more than likely anticipate I will want the rest of the day to review the documents and the evidence and probably have a verdict tomorrow morning or at some point during the day tomorrow."  State Court Record, T.T. at 356, lines 13 to 18.  The trial court made this statement on February 13, 2002 according to the transcript.  See id., at 294 (indicating Wednesday Morning February 13, 2002) and id., at 357 (indicating Wednesday Afternoon, February 13, 2002).  Next, Petitioner points to an exhibit attached to his habeas petition, Dkt. [1-5] at 6, which is a subpoena for him to appear for sentencing.  The date of issuance is February 13, 2002.  Petitioner seems to imply that prior to his trial being completed the trial judge found him guilty and in support thereof cites to this subpoena for sentencing.  In fact, what appears to have occurred is that after the parties had rested their cases, which apparently occurred in the late morning of February 13, 2002, and then the trial judge gave a recess for the parties to accomplish some things and after the recess, the trial judge heard closing arguments.  At the end of the closing arguments on the afternoon of February 13, 2002, , the trial judge stated as follows: "What I would like you to do is to prepare the exhibits that have been admitted.  I will review those exhibits.  I will have a verdict tomorrow morning in this matter."  State Court Record, T.T. 388.  Petitioner reads the foregoing as evidence of fundamental unfairness at his trial because according to Petitioner, the trial judge found him guilty before the end of the Petitioner's trial.

In fact, the evidence read in a light most favorable to the Commonwealth, at best, indicates that upon the close of the case after the oral arguments, the trial judge found Petitioner

14

guilty and so had the subpoena generated thereafter, assuming that the issuance date on the subpoena is not erroneous.  That the trial judge may have done so does not violate any of Petitioner's rights.  The trial court may have considered the evidence so overwhelming that no further amount of reflection until the following day was needed.  Again, such does not violate Petitioner's rights.  The trial judge did not find Petitioner guilty before the end of Petitioner's trial, which for purposes of the present analysis, concluded upon the completion of the closing arguments.  That the trial judge did not formally announce the verdict that he may have reached thereafter (i.e., after the closing arguments) until the following day is of no constitutional significance even if he caused to have the subpoena issued on February 13, 2002.  The issuance date of the subpoena at best, i.e., construing all inferences in favor of Plaintiff, contrary to the rules applicable in federal habeas review, demonstrates that Petitioner was found guilty on the date of February 13, 2002, the date whereon all evidence had been given and closing arguments had been made.   At worst, the issuance date, assuming it was not erroneous, something that Petitioner has not established, indicates that the trial judge came to a verdict on February 13, 2002 after the close of the case and caused the subpoena to be issued.  The Court notes that in the state court record is another subpoena for Petitioner to appear for sentencing and the issuance date thereof is February 14, 2002.  The differences between the two subpoenas are that the one dated the 13th has listed as the charge "Crim Hom."etc.  The one dated the 14th has listed as the charge "1st deg Murder", etc.  There is nothing untoward established by these facts, lt alone, a constitutional violation that requires federal habeas relief.  The court also notes that there is absolutely no evidence as to the time on February 13, 2002 that the subpoena was issued, nor is there evidence as to the time that the closing arguments concluded.  Lastly, the court notes that

although this precise issue was raised before the Superior Court in the PCRA appeal, the Superior Court does not appear to address it in their opinion. Hence, we reviewed this issue de novo. Appel v. Horn, 250 F.3d 203, 210 (3d Cir. 2001). Even reviewing the issue de novo, we do not find that it merits any relief.

The last issue, i.e., issue 6, concerns the trial court's permitting Petitioner's taped statement into evidence, despite Petitioner's statement allegedly being taken in violation of his Fifth Amendment rights. We deem that the Superior Court adequately addressed this issue when it ruled as follows:

> We note that Appellant's trial counsel did in fact file a motion to suppress claiming that the Commonwealth violated Appellant's right to remain silent. In the instant appeal, however, Appellant is asserting that counsel failed to assert an additional basis that would support this claim. Namely, after the police attempted to record Appellant's statement, they realized that the machine had malfunctioned and requested Appellant to start from the beginning. At this point, Appellant laments "Oh, no" and the officer apologizes for the mistake. N.T. 7/24/01, at 85. Afterwards, the officer begins questioning Appellant again, and Appellant cooperates. In fact, this issue was the subject of testimony at the pre-trial hearing [on the suppression motion] and the officer explained that Appellant agreed to proceed with the re-taping. **Id.** Accordingly, we conclude that the record lends no support to Appellant's claim because counsel did in fact litigate a motion to suppress, and even if Appellant's counsel did not specifically base his claim on the "Oh, no," in the context of the record, such a statement did not indicate that Appellant was asserting his right to remain silent, but instead was distraught over the fact that he was about to repeat his statement.

Dkt. [16-6] at 40 to 41. Petitioner does not argue let alone establish that the preceding constitutes a disposition that was contrary to or an unreasonable application of Supreme Court precedent. Neither does he argue that the disposition was an unreasonable determination of the facts in the light of the evidence presented. Even if we were to review this issue de novo, we would reach the same result, finding that the issue is not meritorious, in light of the testimony

adduced at the suppression hearing and in light of the suppression court's findings, which we fully agree with.

As not one of the issues merits relief, the petition should be denied.

To summarize, after thorough review of the habeas petition, the Answer, the traverse and the state curts' opinions and the record in this case, it is clear that the state courts' adjudications of Petitioner's claims were not contrary to, or an unreasonable application of United States Supreme Court precedent nor did those adjudications result in an unreasonable determination of the facts. As for those claims not adjudicated by the state courts, the court finds upon de novo review, those claims are meritless. Accordingly, Petitioner has failed to carry his burden to show entitlement to relief and so the habeas petition should be denied.

**Certificate of Appealability**

A certificate of appealability ("COA"), which is a prerequisite for allowing an appeal to a Court of Appeals, should not be issued unless the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253 (c)(2). A "substantial showing" requires a habeas petitioner to show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right[.]" Slack v. McDaniel, 529 U.S. 473, 484 (2000). See also Walker v. Government of The Virgin Island, 230 F.3d 82, 89-90 (3d Cir. 2000).

Applying this standard to the instant case, the court concludes that jurists of reason would not find it debatable whether the petition fails to state a valid claim of the denial of a constitutional right. Accordingly, a certificate of appealability should be denied.

An appropriate Order follows.

                                                /s/ *Amy Reynolds Hay*  
                                                Chief United States Magistrate Judge

Dated: 12 November, 2009

cc:     Lavon Cecil Smith, Jr.  
        EZ-5402  
        SCI Pittsburgh  
        P.O. Box 99991  
        Pittsburgh, PA 15233

        Counsel of Record via CM-ECF